IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| SHAPES UNLIMITED, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>SWI, LLC,<br><br>   Defendant. | Civil Action No.: 4:25-cv-754<br><br>Judge:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shapes Unlimited, Inc. ("*Shapes*" or "*Plaintiff*"), by and through its undersigned counsel, states as follows for its Complaint against Defendant SWi, LLC ("*SWi*" or "*Defendant*"):

## I.   INTRODUCTION

1. In response to SWi's continuing pattern of bad-faith patent assertion against Shapes and its customers, Shapes brings this civil action seeking a declaratory judgment of invalidity and non-infringement of SWi's U.S. Patent No. 10,954,687 (the "*'687 Patent*") together with damages for tortious interference with business relationships based on SWi's bad-faith conduct.

2. Shapes is a family-owned manufacturer and wholesaler distributor of aluminum building products, including fencing products, based in Youngstown, Ohio.

3. SWi is a competitor of Shapes.

4. SWi has falsely accused multiple Shapes customers of infringing upon SWi's valid and enforceable patent rights based on their use of certain fencing products supplied by Shapes. In addition, SWi has falsely accused Shapes itself of both contributory and induced patent infringement based on its manufacture and sale of the same products.

5. To remove the cloud of false accusations and uncertainty that SWi has cast over Shapes' customer relationships and products, Shapes brings this action to seek (a) a declaration

1

resolving the concrete and immediate controversy between the parties over the validity and alleged infringement of the '687 Patent and (b) relief for SWi's tortious interference with Shapes' business relationships.

## II. THE PARTIES, JURISDICTION, AND VENUE

6. Shapes is an Ohio corporation with a principal place of business at 590 E. Western Reserve Rd., Youngstown, OH 44514.

7. On information and belief, SWi is a Wyoming limited liability company with a principal office at 5920 W. Yellowstone Hwy., Casper, WY 82604.

8. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 100 *et seq*.

9. This Court has subject matter jurisdiction over the federal claims pursuant to at least 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

10. This Court has subject matter jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a) because it is so related to the federal claims that they form part of the same case or controversy.

11. This Court has personal jurisdiction over SWi at least because (a), upon information and belief, SWi has purposefully availed itself of the privilege of conducting activities in Ohio, including within this District, by soliciting and transacting business within this District; contracting to supply goods made under the '687 Patent to residents of this District; offering licenses under the '687 Patent to residents of this District; entering into at least one license under the '687 Patent with a resident of this District; sending a cease-and-desist letter to Shapes, a corporation residing in this District, accusing Shapes of infringing the '687 Patent; threatening to sue Shapes for alleged infringement of the '687 Patent; tortuously interfering with Shapes' relationships with customers,

including Ohio customers; and otherwise purposefully directing activities at residents of this District; and (b) this action arises out of and relates to SWi's activities in Ohio, including within this District.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) at least because a substantial part of the events giving rise to Shapes' claims occurred, and/or is continuing to occur, in this District, and SWi is subject to personal jurisdiction in this District.

### III.  FACTUAL BACKGROUND

#### A.  Fence Stiffeners

13. Fences are commonly constructed using vertical fence "posts" and horizontal fence "rails" that run between the posts. One traditional method of fence post installation involves digging holes in the ground, filling the holes with concrete, mounting the fence posts in the concrete, and letting the concrete set around the fence posts. After the concrete sets, the horizontal fence rails are installed between the fence posts.

14. A less cumbersome, "no-dig" method of fence construction involves the use of fence post "stiffeners." These stiffeners, usually made of steel or aluminum, can be used to provide internal strength and reinforcement for the fence posts as an alternative to the posts being anchored in concrete-filled holes in the ground. More specifically, a post stiffener is driven into the ground using a sledgehammer or "post pounder," and then a hollow, tube-like fence post (often made from a metal like aluminum or polymeric material like vinyl) is placed over it. Once the fence posts are up, the fence rails are attached between them.

15. This "no-dig" method of fence installation has been employed in the fencing industry for many years. For example, a set of videos posted on YouTube by CAN Supply Wholesale Ltd. on December 5, 2016 (the "*CSW Videos*"), provided step-by-step instructions for

installing a vinyl fence using metal post stiffeners.[1] As shown in the following screenshots, the CSW Videos show, *inter alia*, driving a series of metal post stiffeners into the ground; sliding a hollow "PVC" (polyvinyl chloride) post over each post stiffener; and installing horizontal rails between adjacent posts by inserting one end of a horizontal rail into a hole in the side of the first post, lifting the second post slightly off the ground so that the other end of the horizontal rail can be inserted into a hole in the side of the second post, and then sliding the second post down to the ground.







---

[1] https://www.youtube.com/watch?v=tDuSq-mV5DA; https://www.youtube.com/watch?v=SARWP7smF8o; https://www.youtube.com/watch?v=cLEFTifOX4c; https://www.youtube.com/watch?v=ZEcGImbD0e8; https://www.youtube.com/watch?v=GuSY6IK8Cdw&t=59s.





16. Founded in 1996, Shapes is a privately held manufacturer and wholesale distributor of aluminum building products serving the Northeast, Southeast, and Midwest markets. Since its founding, Shapes has provided a variety of aluminum extrusions to the window, vinyl fencing, and aluminum fencing industries.

17. Since at least as early as 2016, Shapes has been selling extruded aluminum post and rail stiffeners for use in "no-dig" fence construction. For example, the printout attached hereto as **Exhibit A** was publicly available at least as early as April 21, 2016, and shows twenty seven (27) different styles of fence stiffeners sold by Shapes at the time of its publication, including I-beam-style post stiffeners.

18. On information and belief, numerous other fencing suppliers besides Shapes and CAN Supply Wholesale Ltd. have likewise sold similar fence stiffeners for many years.

19. For example, as shown in the printout attached hereto as **Exhibit B**, third party Eastern Metal Supply sold dozens of fence stiffeners, including I-beam-shaped post stiffeners,

5

since at least as early as November 5, 2011. This included, among others, the following "Post and Rail Stiffener Assembly" (the "*EMS Assembly*"):



As shown above, the EMS Assembly consisted of an I-beam-style post "Stiffener"; a hollow, tube-like "PVC Post" placed over the post "Stiffener"; a "P-Rail Stiffener" inserted into a side opening in the PVC Post; and a "PVC Rail" placed over the P-Rail Stiffener.

**B.    SWi's '687 Patent**

20.    On information and belief, the application that resulted in the '687 Patent was filed on March 27, 2018, and was assigned U.S. Serial No. 15/937,274 (the "*'274 Application*").

21.    On information and belief, on or about March 20, 2018, the inventor, Stephen Dalton of Ray, Michigan had assigned his rights in the '274 Application to D Fence LLC ("*D Fence*"), a Michigan limited liability company.

22.    The '274 Application issued as the '687 Patent on or about March 23, 2021.

23.    On or about September 16, 2022, D Fence assigned its rights in the '687 Patent to SWi.

24.    The '687 Patent describes and claims a method of building a fence in which the fence posts are erected by driving a series of vertical beams into the ground and then sliding a

6

hollow "tube" over each beam. In particular, the patent specification shows the use of "I-beams" in connection with this method as shown, for example, in Figs. 2 and 3 of the patent:



25. The '687 Patent further describes installing one or more horizontal rails between adjacent fence posts. The hollow tubes that are placed over the I-beams have holes in their sides. The opposing ends of one or more horizontal rails are inserted through the holes in the sides of two adjacent tubes while one of the tubes is elevated off the ground. Once the horizontal rails are in position, that tube is slid down the corresponding I-beam, as shown in Fig. 5 of the patent:



26. However, this method of fence installation was known prior to the filing date of the '687 Patent as demonstrated by, *inter alia*, Shapes' own fence stiffening products as well as third-party fence stiffening products, including without limitation those described in the EMS Assembly and CSW Videos.

27. Information regarding this material prior art was not before the U.S. Patent and Trademark Office (the "**PTO**") during prosecution of the '687 Patent. On information and belief, had the PTO been aware of this material prior art, it would not have allowed the claims of the '687 Patent to issue.

C. SWi's Anti-Competitive Activities

28. On information and belief, SWi commercializes the '687 Patent through, *inter alia*, an entity known as iFence, LLC ("***iFence***"). For example, SWi's website[2] advertises an "I-Post no dig insert" product but notes that "Sales of I posts has moved to: SHOPIFENCE.COM."

29. On information and belief, iFence also operates the www.ifencellc.com website, which includes an option to "find a licensed iFence installer near you."

30. The list of "licensed iFence installer[s]" on the www.ifencellc.com website includes at least one Ohio company, Summit Fence, which, upon information and belief, is based out of Akron, Ohio.

31. SWi, acting alone and/or in concert with iFence, actively promotes the idea that it owns exclusive rights in "no-dig" fence installation. For example, an "FAQ" page on the www.ifencellc.com website claims that "[u]sing the I-Post with the installation of an aluminum fence is a patented system reserved for our licensee partners."[3]

32. On information and belief, SWi, acting alone and/or in concert with iFence, routinely sends communications to fence installation businesses throughout the country threatening suit if they do not take a license to the '687 Patent from SWi.

---

[2] *See, e.g.*, https://www.swifence.com/i-post-no-dig-insert-for-aluminum-fence-line-gate.html?id=96783051.
[3] https://www.ifencellc.com/more/faqs/.

8

33. On information and belief, on multiple occasions, SWi has targeted customers of Shapes in connection with I-beam-style fence post stiffeners supplied by Shapes (the "**Accused Products**").

34. For example, on January 26, 2024, SWi sued one of Shapes' customers, A to Z Quality Fencing, LLC ("*A to Z*"), alleging that A to Z's use of I-beam-style fence post stiffeners to install fences constituted infringement of the '687 Patent. *See SWi LLC v. A to Z Quality Fencing LLC*, Case No. 2:24-cv-00110-JPS (E.D. Wis.). SWi dismissed this suit, without prejudice, on July 9, 2024.

35. As another example, on or around November 27, 2024, SWi contacted another one of Shapes' customers, Good Shepherd Fence Company LLC ("*Good Shepherd*"), accusing Good Shepherd of infringing the '687 Patent, demanding that Good Shepherd pay for a license to the patent, and threatening suit if Good Shepherd did not comply.

36. On December 9, 2024, Shapes sent a letter to SWi addressing SWi's allegations against Good Shepherd. Among other things, Shapes' letter noted that SWi had failed to provide any evidence to substantiate its allegations of patent infringement against Good Shepherd. In addition, Shapes' letter identified prior art that clearly anticipates (or, at a minimum, clearly renders obvious) all of the claims of the '687 Patent. For example, Shapes' letter explained that fence post stiffener products materially indistinguishable from the Accused Products were sold by Shapes by no later than April 21, 2016, or almost two years prior to the filing date of the '687 Patent. Shapes' letter attached documentation to support this claim. Shapes' letter also identified other invalidating prior art, including the EMS Assembly and CSW Videos, that was never considered by the PTO during prosecution of the '687 Patent. Accordingly, Shapes requested that

9

SWi cease and desist from further asserting the '687 Patent against Shapes' customers. A true and correct copy of Shapes' December 9 letter is attached hereto as **Exhibit C**.

37. On December 22, 2024, SWi sent a response to Shapes' letter. SWi's letter did not provide any additional support to substantiate its allegations of patent infringement against Good Shepherd. SWi's letter did not even identify which specific claim(s) of the '687 Patent were allegedly being infringed by Good Shepherd. SWi's letter also did not explain how, in light of the prior art identified in Shapes' December 9 letter, SWi could maintain in good faith that the use of the Accused Products in fence installation projects constituted a violation of SWi's valid and enforceable patent rights. Even so, SWi's letter asserted that Shapes is "liable" for its "unlawful" sale and promotion of the Accused Products, which it claimed amounts to inducing and contributing to others' infringement of the '687 Patent in violation of 35 U.S.C. § 271(b) and (c), and demanded that Shapes take a license to the '687 Patent. A true and correct copy of SWi's letter is attached hereto as **Exhibit D**.

38. On January 13, 2025, Shapes sent another letter to SWi further rebutting SWi's assertion that Shapes has infringed any valid and enforceable claim of the '687 Patent. A true and correct copy of this letter is attached hereto as **Exhibit E**.

39. On January 15, 2025, SWi sent Shapes a draft non-exclusive license to the '687 Patent.

40. On February 4, 2025, Shapes informed SWi that SWi's proposed license was unacceptable to Shapes.

41. In late February 2025, representatives from both parties were attending the annual FENCETECH convention and trade show of the American Fence Association.

42. On or about February 28, 2025, SWi's President, Mark Olson, stormed into Shapes' booth at FENCETECH, confronted Shapes' personnel in a loud and threatening manner, and demanded to speak "face to face" rather than "through lawyers." Mr. Olson eventually exited the booth after being asked to leave several times.

43. Upon information and belief, SWi's representatives also confronted executives from the American Fence Association, who subsequentially held conversations with Good Shepherd's representatives at FENCETECH regarding Good Shepherd's unwillingness to pay SWi for a patent license.

44. Upon information and belief, SWi has acted in bad faith in asserting the '687 Patent against Shapes, Shapes' customers, and others in the industry.

45. Upon information and belief, SWi's actions in asserting the '687 Patent constitute bad-faith conduct at least because SWi is aware that the '687 Patent is invalid.

46. Upon information and belief, SWi has been aware of the '687 Patent's invalidity at least since Shapes' December 9 letter, which identified multiple examples of clearly invalidating prior art.

47. Upon information and belief, SWi was also aware of the '687 Patent's invalidity prior to Shapes' December 9 letter. As described above, the use of fence post stiffeners, including I-beam-style stiffeners, in "no-dig" fence construction was well-known in the fencing industry long before the filing date of the '274 Application on March 27, 2018. Upon information and belief, as an active player in the industry, SWi was aware of this fact.

48. As a direct and proximate result of SWi's bad-faith patent assertion tactics, Shapes has suffered substantial damages, including without limitation in the form of lost sales and profits.

49. For example, prior to receiving threatening communications from SWi, Good Shepherd had expressed an interest in increasing its purchases of the Accused Products from Shapes. Specifically, Good Shepherd had expressed an interest in ordering full truckload quantities of the Accused Products. However, Good Shepherd has since advised Shapes that it would forgo placing these bulk orders because of SWi's threats of litigation.

50. Similarly, other existing Shapes customers, including, but not limited to, A to Z, have advised Shapes that they would be reducing and/or stopping their orders of the Accused Products from Shapes because of SWi's aggressive patent assertion tactics.

## Count I – Declaratory Judgment of Patent Invalidity
## 28 U.S.C. §§ 2201 and 2202

51. Shapes restates and incorporates the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

52. As a result of SWi's acts described herein, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to the invalidity of SWi's patent rights described in and subject to the '687 Patent.

53. A judicial declaration is necessary and appropriate so that Shapes may ascertain its legal rights with respect to continued manufacture and sale of the Accused Products.

54. Upon information and belief, the claims of the '687 Patent are invalid under at least 35 U.S.C. § 102 (anticipation) and/or 35 U.S.C. § 103 (obviousness) in view of the prior art, including without limitation Shapes' own fence stiffener products, such as those shown in Exhibit A; fence stiffener products sold by third parties, such as those shown in Exhibit B; various publicly available instructional videos from fence companies demonstrating the use of "no-dig" drivable

posts and fencing systems, including without limitation the CSW Videos[4]; and other material prior art.

55. Shapes is entitled to a declaratory judgment that the '687 Patent is invalid.

56. Shapes is further entitled to, among other relief, preliminary and permanent injunctive relief enjoining SWi from alleging, representing, or otherwise stating that Shapes' manufacture and sale of the Accused Products infringes any valid and enforceable claim of the '687 Patent.

### Count II – Declaratory Judgment of No Patent Infringement
### 28 U.S.C. §§ 2201 and 2202

57. Shapes restates and incorporates the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

58. As a result of SWi's acts described herein, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that Shapes has not infringed any valid claim of the '687 Patent.

59. A judicial declaration is necessary and appropriate so that Shapes may ascertain its legal rights with respect to continued manufacture and sale of the Accused Products.

60. Shapes is entitled to a declaratory judgment that its manufacture and sale of the Accused Products does not constitute patent infringement (including, without limitation, contributory patent infringement and/or induced patent infringement).

61. Shapes is further entitled to, among other relief, preliminary and permanent injunctive relief enjoining SWi from alleging, representing, or otherwise stating that Shapes' manufacture and sale of the Accused Products infringes any valid and enforceable claim of the '687 Patent.

---

[4] *See also, e.g.*, https://www.youtube.com/watch?v=ZA8-A1SX8M0 (WamBam Fence).

### Count III – Tortious Interference With Business Relationships

62. Shapes restates and incorporates the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

63. SWi has tortiously interfered with several of Shapes' business relationships, including with Good Shepherd, A to Z, and other existing and/or prospective customers.

64. In each instance, SWi knew or should have known that Shapes had an existing and/or prospective contractual relationship with a customer.

65. In each instance, SWi knowingly and intentionally interfered with Shapes' business relationship, including without limitation by causing the customer to forgo purchases of the Accused Products from Shapes.

66. SWi's acts have resulted in substantial damages to Shapes, including without limitation in the form of lost sales and profits and significant reputational harm to Shapes.

67. By reason of SWi's acts, Shapes is entitled to equitable remedies and damages in an amount to be proven at trial.

### **REQUEST FOR RELIEF**

WHEREFORE, Shapes respectfully requests judgment against SWi as follows:

1. Entering judgment against SWi and in favor of Shapes on all counts in this Complaint;

2. Adjudging that Shapes has not infringed and is not infringing, either directly or indirectly, any valid and enforceable claim of the '687 Patent;

3. Granting an injunction preliminarily and permanently restraining and enjoining SWi, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and

14

assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

    a.    sending further communications to Shapes' customers accusing them of infringing the '687 Patent;

    b.    making or displaying any statement, representation, or depiction that Shapes has infringed or is infringing the '687 Patent;

4. Granting a mandatory injunction requiring SWi to retract any statements previously issued to Shapes' customers regarding alleged infringement of the '687 Patent;

5. Awarding Shapes damages for SWi's tortious interference with business relationships, such damages to include Shapes' actual loss, SWi's unjust gains, punitive damages, and any other damages that may be awarded;

6. Awarding Shapes its reasonable attorneys' fees and costs; and

7. Awarding Shapes interest, including prejudgment and post-judgment interest, on the foregoing sums; and

8. Awarding Shapes such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Shapes hereby demands a trial by jury on all issues so triable.

Dated: April 14, 2025                Respectfully submitted,

                                          */s/* Oleg Khariton
                                          Oleg Khariton (OH Bar No. 91260)
                                          DINSMORE & SHOHL LLP
                                          255 E. Fifth Street, Ste. 1900
                                          Cincinnati, OH 45202
                                          Oleg.Khariton@Dinsmore.com
                                          Telephone: (513) 977-8246

Luca L. Hickman (motion for *pro hac vice* admission forthcoming)
DINSMORE & SHOHL LLP
201 N. Franklin St., Ste. 3050
Tampa, FL 33602
Luca.Hickman@Dinsmore.com
Telephone: (813) 543-9835

*Attorneys for Plaintiff Shapes Unlimited, Inc.*